**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAJUANA BANKS, | No.  2:24-CV-3237-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 17 and 18.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

Step 4     If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5     If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on June 29, 2022. See CAR 17.[1] In the application, Plaintiff claims disability began on July 23, 2021. See id. Plaintiff's claim was initially denied. See id. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on April 10, 2024, before Administrative Law Judge (ALJ) Joseph Marcee. See id. In a June 20, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.   The claimant has the following severe impairment(s): left elbow tendinopathy, adhesive capsulitis of the left shoulder, degenerative disc disease of the lower back, and bilateral carpal tunnel syndrome.

2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

3.   The claimant has the following residual functional capacity: she can perform light work; she is able to push or pull with the left upper extremity frequently as much as she can lift and carry; she should never climb ladders, ropes, and scaffolds; the claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; she can reach overhead with the left upper extremity occasionally; she can frequently handle, finger, and feel with the bilateral upper extremities.

4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant has acquired skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

See id. at 19-29.

After the Appeals Council declined review on September 27, 2024, this appeal followed.

///

///

///

///

///

---

[1]     Citations are to the Certified Administrative Record (CAR) lodged on March 12, 2025, ECF No. 12.

### III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred at Step 4 by improperly evaluating her subjective statements and testimony; (2) the ALJ erred at Step 5 by failing to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles; and (3) the ALJ erred at Step 5 by failing to make required findings concerning transferability of job skills.  See ECF No. 17-1.

**A.    <u>Evaluation of Plaintiff's Subjective Statements and Testimony at Step 4</u>**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.  See <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See <u>id.</u>  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See <u>id.</u>; <u>see also</u> <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

### 1.    The ALJ's Findings

At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony in determining Plaintiff's residual functional capacity. See CAR 23-25. The ALJ began the analysis with the following summary of Plaintiff's subjective statements and testimony:

> In a function report, the claimant stated that she had difficulty engaging in exertional, postural, and manipulative activities due to her impairment. She reported difficulty with housework and personal care (See Exhibits 7E; 8E). At the hearing, she testified that she had difficulty reaching overhead with the left arm. Further, she stated that she had difficulty using her hands due to carpal tunnel syndrome. Additionally, she reported difficulties with housework (See Hearing testimony).

CAR 23.

The ALJ found Plaintiff's statements and testimony "not entirely consistent with the medical evidence and other evidence in the record. . . ." Id. The ALJ offered the following reasons to support his conclusion:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the objective medical evidence and other evidence of the record do not support them. The record shows that she reported that she did housework and drove (See Exhibit 20F; Hearing testimony). The record also shows

6

that she reported improvement of her left upper extremity limitations and increased activity level despite her alleged level of limitations (See Exhibit 24F/8). Additionally, it showed that she cared for her child (See Exhibit 8E). Thus, it does not support that she is as limited as alleged.

CAR 23.

Next, the ALJ set forth a summary of the objective medical evidence of record as follows:

Turning to the objective medical evidence, it shows that the claimant's impairment of the left shoulder and left elbow tendinopathy have remained stable with treatment. An MRI of the left shoulder performed in June 2021 showed acromioclavicular joint degeneration and hypertrophy and thickening and inflammation of the capsule at the axillary pouch (See Exhibit 16F/59). In October 2021, she underwent arthroscopic decompression and ligament release surgery on the left shoulder for left shoulder impingement syndrome, acromioclavicular osteoarthritis, rotator cuff tendinosis, synovitis, and bleeps tendinosis (See Exhibit 16F/18-20, 25-27; 14F/57-59). At a visit for complaints of left shoulder pain in February 2022, she exhibited limited range of motion of the left shoulder. However, she had a negative drop arm test (See Exhibit 27F/16-22). An MRI of the left shoulder performed in July 2022 showed mild findings (See Exhibit 17F/80). At a visit for complaints of left elbow pain in October 2022, she had pain with pronation supination, and tenderness along the triceps tendon and medial epicondyle, increased pain with resisted motion in all directions, and decreased range of motion of the left elbow. However, she had no neurological deficits. Her pain was assessed to be out of proportion to exam (See Exhibit 15F/4-5).

In April 2023, she underwent a left shoulder arthroscopy for adhesive capsulitis and contracture and superior labral fraying (See Exhibit 29F/3-5). At a visit in June 2023, she had limited range of motion of the left shoulder, a positive Hawkin's test, and decreased motor strength in adduction. Further, she had tenderness to palpation over the lateral epicondyle. However, she had no shoulder joint instability (See Exhibit 27F/48). In October 2023, at a qualified medical evaluation in connection with her worker's compensation claim, she exhibited limited range of motion of the left shoulder, but she had a negative impingement sign and a negative Cross arm test in the left shoulder. She had lateral epicondyle tenderness in the left elbow but full range of motion of the left elbow and instability of the elbow (See Exhibit 27F/43-75). More recently, at a visit in February 2024, she had similar findings on exam (See Exhibit 24F/8-11).

At a consultative physical examination in September 2023 by Satish Sharma, MD, the claimant had tenderness to palpation over the lateral epicondyle of the left elbow and the superolateral aspect of the left shoulder. She had a positive impingement sign and pain with range of motion of the left shoulder. She had full range of motion of the right

///

7

shoulder and elbow. Further, she demonstrated 5/5 motor strength in the bilateral upper extremities (See Exhibit 22F).

CAR 23-24.

The ALJ then addressed Plaintiff's allegations as to the following specific impairments: (1) left shoulder and left elbow tendinopathy; (2) bilateral carpal tunnel syndrome; and (3) degenerative disc disease of the lumbar spine.  See id. at 24-25.

i.      Left Shoulder and Left Elbow Tendinopathy

Based on the objective evidence related to left shoulder and left elbow tendinopathy, the ALJ stated as follows:

Thus, the objective medical evidence shows that the claimant's impairment of the left shoulder and left elbow tendinopathy have remained stable with treatment. More importantly, she had no instability of the left shoulder or left elbow, and she generally had full range of motion of the left elbow on exams. Nevertheless, in light of the noted surgery on the left shoulder, and limited range of motion of the left shoulder, decreased motor strength in the left shoulder, and tenderness in the left elbow on exams, the undersigned has found that the claimant is limited to the light exertional level. She is able to push or pull with the left upper extremity frequently as much as he or she can lift and carry. She can reach overhead with the left upper extremity occasionally.

CAR 24.

ii.      Bilateral Carpal Tunnel Syndrome

Regarding bilateral carpal tunnel syndrome, the ALJ stated:

With respect to her bilateral carpal tunnel syndrome, it too has remained stable. At a visit in April 2022, she had a positive Tinel sign at the wrist on the left. It was noted at the time that her nerve conduction study from March 2022 showed abnormal findings consistent with left carpal tunnel syndrome and ulnar neuropathy at the elbow (See Exhibit 10F/9-10). An MRI of the left wrist performed in November 2022 showed mild fraying and tenosynovitis (See Exhibit 17F/76-77). EMG and nerve conduction studies performed in November 2022 showed electrophysiologic evidence of median neuropathy at the left wrist and ulnar neuropathy at the left elbow, median neuropathy at the left wrist with left carpal tunnel syndrome, and focal ulnar neuropathy at the left elbow but no denervation or renervation potentials (See Exhibit 23F/1-6). In October 2023, she had tenderness and a positive Tinel sign in the left wrist, but she had negative Phalen's and Finkelstein's tests and full range of motion of the wrist (See Exhibit 27F/72). At a visit in February 2024, she had decreased sensation over the medial hand and lateral hand on the right side, and left thumb, and 4/5 grip strength on the left and 5-/5 on the right. However, she had normal reflexes in the bilateral upper extremities (See Exhibit 24F/8-11).

8

In April 2024, she underwent a left carpal tunnel release surgery for left carpal tunnel (See Exhibit 29F/1-2).

At the aforementioned consultative physical examination, the claimant had positive Tinel's signs in the bilateral wrists and decreased sensation to pinprick in the thumb and index and middle fingers of both the hands. However, she had full range of motion of the bilateral wrists and fingers in both hands (See Exhibit 22F).

Thus, the objective medical evidence shows that the claimant's bilateral carpal tunnel syndrome has remained stable. Of note, she retained preserved grip strength bilaterally. Nonetheless, considering the noted electrophysiologic evidence of median neuropathy at the left wrist, ulnar neuropathy at the left elbow, median neuropathy at the left wrist, and focal ulnar neuropathy at the left elbow on EMG and nerve conduction studies, and positive Tinel's signs in the bilateral wrists and decreased sensation in the bilateral hands-on exams, the undersigned has found that the claimant can frequently handle, finger, and feel with the bilateral upper extremities.

CAR 24-25.

### iii.   Degenerative Disc Disease of the Lumbar Spine

Finally, as to Plaintiff's degenerative disc disease of the lumbar spine, the ALJ stated as follows:

Regarding her degenerative disc disease of the lumbar spine, it has remained stable with conservative care. At a visit in January 2021, she had full range of motion of the lumbar spine and negative bilateral straight leg tests (See Exhibit 11F/399-401). At a visit in October 2022, she had normal gait and intact motor strength and sensation on exam (See Exhibit 15F/4-5). Xrays of the lumbar spine obtained in January 2024 showed a mild multilevel degenerative disc disease (See Exhibit 28F/1). She was advised to engage in therapeutic exercises for her back pain (See Exhibit 28F/16). At a visit for complaints of back pain in February 2024, she had pain with range of motion of the lumbar spine. However, she had no weakness or numbness of the lower extremities (See Exhibit 28F/33-36). More recently, in March 2024, it was noted that her MRI of the lumbar spine showed mild arthritis but no evidence of pinched nerve (See Exhibit 28F/41).

At the aforementioned consultative physical examination, the claimant had tenderness to palpation over the lumbar spine and the paravertebral region, and pain with range of motion of the lumbar spine. However, she had negative straight leg tests and 5/5 motor strength in the bilateral lower extremities. She was able to walk without difficulties, and she was able to walk on her heels and toes and perform tandem walk (See Exhibit 22F).

Therefore, the objective medical evidence shows that the claimant's degenerative disc disease of the lumbar spine has remained stable with conservative care. More importantly, she had only mild findings on imaging studies of the spine, and negative bilateral straight leg tests, normal gait, and 5/5 motor strength and intact sensation in the bilateral

lower extremities on exams. Nevertheless, in light of the noted tenderness to palpation over the lumbar spine and pain with range of motion of the lumbar spine on exams, the undersigned has found that the claimant is limited to the light exertional level. She should never climb ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl.

CAR 25.

2.      Plaintiff's Contentions

Plaintiff argues that, aside from the ALJ's discussion of Plaintiff's daily activities, the ALJ ". . . provided no analysis explaining which medical evidence was inconsistent with Ms. Banks' subjective statements of pain and offered no express reasons for rejecting Ms. Banks' credibility regarding her subjective symptom testimony." ECF No. 17-1, pg. 28.  As to Plaintiff's daily activities, Plaintiff contends that the ALJ failed to explain how the limited daily activities identified by the ALJ – doing housework and driving – show abilities which are transferable to a work setting.  See id. at 30-31.

3.      Analysis

The Court does not agree with Plaintiff as to her first argument that the ALJ failed to identify portions of the objective record which undermine her alleged limitations related to her shoulder and elbow, carpal tunnel syndrome, and degenerative disc disease.  The Court, however, agrees with Plaintiff as to her second argument that the ALJ failed to explain how Plaintiff's daily activities transfer to a work setting.

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

10

claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ identified Plaintiff's statements which indicated that she did housework and drove.  See CAR 23 (citing Exhibit 20F and hearing testimony).  The ALJ, however, provided no analysis how these activities undermine Plaintiff's subjective statements by indicating an ability to engage in full-time competitive work.  Exhibit 20F is a mental health report prepared by consultative examining doctor Gena Clark-McNight, Ph.D., following an examination on July 27, 2023.  See CAR 1986-88.  In this report, Dr. Clark-McNight stated: "Per the claimant: She can drive, pay bills, care for others, go shopping, clean the home, do laundry, manage money, and make appointments."  Id. at 1987.  This report in and of itself does not reflect an ability to engage in full-time work given that there is no description as to what, if any, limitations Plaintiff experienced in performing these various activities.

In this regard, Plaintiff's reports of her daily activities at Exhibits 7E and 8E – which are cited but not discuss by the ALJ – are instructive.  As to meal preparation, Plaintiff states that she can prepare simple meals (cereal, crock pot meals, microwaveable meals) once a week.  See CAR 300.  Plaintiff stated that she could no longer prepare more complicated meals on a more frequent basis due to difficulty lifting pots and pans, trouble reaching for things, and lack of motivation.  See id.  As to household chores, Plaintiff stated that she relies on family and friends to help out due to difficulty with kneeling, lifting, reaching, and using her hands.  See id. at 301.  As to driving, Plaintiff stated that she limits herself to short trips due to problems turning to check for traffic.  See id.  Plaintiff further stated that she prefers to have others drive.  See id.

11

Regarding shopping, Plaintiff stated that she makes more frequent but shorter trips to the store because she has trouble lifting bags of groceries and forgets items to purchase if there are many. See id. at 302.  Plaintiff also stated that shopping in crowded stores makes her anxious.  See id.

Thile the ALJ cited Plaintiff's reports, the ALJ did not discuss them in the context of limitations on Plaintiff's daily activities.  Given the limitations to which Plaintiff testifies, the Court cannot find that the ALJ's citation to Dr. Clark-McNight's report that Plaintiff could drive, pay bills, care for others, and shop reflects that Plaintiff's daily activities show that Plaintiff has an ability to engage in full-time competitive work.  Absent a viable rationale as to Plaintiff's daily activities, all that remains is the ALJ's rejection of Plaintiff's subjective statements and testimony based solely on inconsistency with the objective evidence.  As explained above, the ALJ may not rely solely on this factor.  See Bunnell, 947 F.2d at 347-48.  The matter will be remanded to allow the Commissioner to more thoroughly evaluate the entirety of Plaintiff's subjective statements and testimony.

**B.**      **Evaluation of Vocational Factors at Step 5**

Because the Court has determined that a remand is necessary based on the ALJ's faulty analysis at Step 4 concerning Plaintiff's subjective statements and testimony, the Court does not address the remainder of Plaintiff's arguments.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment, ECF No. 17, is granted;

2.    Defendant's motion for summary judgment, ECF No. 18 is denied;

3.    The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 9, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

13